### ANDERSON *vs.* COONLEY.

A *general agent* entrusted by his *principal* with power to make and enter in-
to contracts for the purchase of grain, has power to modify or waive a con-
tract made by him in respect to such grain.

The *authority* of an agent being limited to a *particular business*, does not
make it *special;* it may be as general in regard to that, as if its range was
unlimited.

ERROR from the Onondaga common pleas. Coonley
sued Anderson in the court below, for the non-delivery of a
quantity of barley, agreed to be sold at a certain price. On
the trial of the cause, it appeared that the contract for the
sale and purchase of the barley was made between Ander-
son and one W. S. Worthington, who was the agent of
Coonley, to contract for the purchase of barley; and that
the barley was not delivered pursuant to the contract. The
defendant offered to prove that soon after the contract was
made, Worthington sent word to him that he *did not want
his barley*, as it had been injured : which evidence was ob-
jected to by the plaintiff, on the ground that it had not been
shown that Worthington had *authority to discharge the con-
tract:* which objection was sustained by the court, and the
defendant excepted. The plaintiff obtained a verdict and
entered judgment thereon. The defendant sued out a writ
of error.

*F. G. Jewett*, for plaintiff in error.

*L. B. Raymond*, for the defendant in error, cited Paley
on Agency, 164; 1 Livermore on Agency, 107,8; 1 Bailey's
S. C. R. 648.

*By the Court*, NELSON, Ch. J.   I think the common pleas
erred.   A *general agent* is bound to exercise a sound dis-
cretion in the business in which he is engaged, and he pos-
sesses all the necessary implied powers within the scope of
his authority for this purpose.   An authority to settle ac-
counts, implies a power to allow credits; to sell a horse, to
make a sale in the usual way.   The agent stands in the

place of his principal, in respect to the particular business, and should conduct it as a prudent and discreet man would manage his own affairs. The doctrine in respect to a *special agent* is different: as a general rule, it may be said *he* is confined to his instructions; but the authority of the agent being limited to a *particular business* does not make it *special ;* it may be as *general* in regard to that, as if the range of it was unlimited.

It appears to me that the general authority to Worthington *to contract* for barley, reasonably implied power to *modify* or *cancel* the contracts which might be made by him. This power is essential to enable the agent to protect the interests of his principal ; otherwise, he is altogether disabled from getting rid of an improvident engagement, and is circumscribed in the exercise of his discretion when it might be most essential in the course of the execution of his poweis. I venture to say such is the general understanding of *principals* and of the business community. It cannot be an unauthorized stretch of power to modify contracts which a party is generally authorized to enter into for another : and if he may do this, he may upon the same principle waive them altogether. There can be no danger to the *principal* in this latitude of construction of the powers of the *agent ;* for if he be willing to trust the agent with power to *bind* him in the making of a contract, he surely cannot object that he should have the power to *absolve* him from contracts made. If this view be correct, the court below erred in rejecting the evidence offered ; for had it been received, a waiver of performance would have been shown which would have been an answer to the action. Judgment must be reversed, and a *venire de novo* be issued from the court below ; costs to abide event.