## Goodale *vs.* Wheeler & a.

A town having a right in a meeting house, voted to sell it by auction, upon certain terms of sale prescribed by them, and appointed the defendants a committee for that purpose. They accordingly advertised the property, and in addition to the conditions prescribed by the town, they provided that $20·00 of the purchase money should be paid at the time of the sale, to be forfeited to the town, if the purchaser should not complete the contract. The plaintiff was the highest bidder, but refused to make the deposit required, and the defendants thereupon refused to make a conveyance of the property to him. The plaintiff then brought this suit, on account of such refusal by the defendants.

*Held,* that it was competent for the defendants to require the deposit to be made, as it was calculated to enable them to effect the purpose of the town by ensuring a sale; and that, as the plaintiff had not made the deposit, this action could not be maintained.

*Held,* also, that even if the defendants had no authority to require the deposit to be made, for a refusal to convey, they would be liable to no persons but their employers.

CASE. The declaration set forth that the town of Temple, on the 16th day of April, 1838, were seized and possessed of a certain meeting-house, and had the right to sell the same by agents duly authorized—that said town, at a legal meeting on said 16th day of April, voted to sell at public auction all the right of the town in the house as a place of religious worship, on the following conditions and reservations, viz. : reserving to the town the right of using the house for town meetings, and to the owners of pews their full rights ; and for this purpose, previous to the sale, all pews were to be appraised, and the purchaser, before receiving his deed, was to pay for all such pews as the owners might wish to sell, at the appraisal, provided such owners should, within ten days after the sale, give notice of their wish to sell, &c.—the purchaser to keep the house in good repair, &c.—that the purchaser have a good and sufficient deed, with the aforesaid reservations and conditions, as soon as the pews of those who should wish to sell, should be paid for ; and in case the purchaser should not, within thirty days after the sale, comply with the conditions aforesaid, and take his deed, a deed

Goodale *v*. Wheeler.

should be made to the next lower bidder, and should he decline to take such deed at his bid, then a deed to be made to the next lower bidder, who would take a deed at his bid, on the conditions aforesaid.

The declaration then alleged that the town chose a committee to appraise the pews, and chose the defendants a committee to advertise and sell the house at public auction on the terms aforesaid, and authorized them to execute a deed ; and that the defendants accepted the trust, and promised faithfully to discharge it—that the pews were duly appraised by the committee for that purpose, and the defendants afterwards advertised and gave notice that they would sell said house on the seventh day of May, 1838—that at the time and place of sale, they offered said house for sale—that the plaintiff bid $108·00, and one Benjamin Whiting bid $5000·00, who afterwards, and within thirty days from said sale, declined and refused to take a deed.

It was then averred that the plaintiff bid a greater sum than any other person except said Whiting, and was the next lower bidder—that he paid to all the owners of pews who gave notice of their wish to sell, the sums at which they were appraised—that he was entitled to receive a deed from the defendants at his offer and bid ; was ready to receive it ; and after Whiting refused, and within thirty days of the sale, to wit., on the thirty-first day of May, 1838, tendered to the defendants the said sum of 108·00, so bid by him, and requested them to execute and deliver a deed, agreeably to the vote of the town, which it was their duty to do ; but that the defendants, with intent to injure the plaintiff, refused to execute and deliver to him a deed, &c.

The defendants severally pleaded the general issue.

The plaintiff, in support of the action, introduced evidence of the votes of the town, as set forth in the declaration ; also, that the defendants, on the 21st day of April, gave public notice in writing, for the sale of the right of the town in said house, by auction, on the seventh day of May, which notice

contained the following clause, viz., "conditions in accordance with the vote of the town;" also, that he attended the sale and bid $108·00; that said Whiting bid $5000·00, and that it was struck off to him—that said Whiting, within thirty days, gave notice that he should not take a deed, and that the plaintiff having purchased the only pew which the owner had elected to sell, according to the vote of the town, within thirty days tendered $108·00 to the defendants, and demanded a deed, to which they replied that they had conveyed the house to Mr. Felt.

On the part of the defendants, it appeared that at the time and place of sale, and before they proceeded to offer the house at auction, they gave notice of certain conditions of sale, the first, second and third of which related to the reservations specified in the votes of the town, as set forth in the plaintiff's writ, and the fourth and fifth of which were as follow, viz. :

"4th. In order to indemnify the town for the expenses of the sale, twenty dollars shall be paid down, or secured to be paid, and for the remainder a credit of six months will be given; undoubted security, on interest, made payable to the town, will be required.

"5th. A good and sufficient deed, with the foregoing conditions and reservations, will be executed and ready for delivery to the highest bidder, on the 18th day of May instant, and possession at the time.

"In case the highest bidder does not, within thirty days, comply with the conditions and take the deed, the twenty dollars paid down, or secured to be paid, will be forfeited for the use of the town, and the next lower bidder may take it at his own bid; if he refuses, the next lower may take it; and so on, if any one will take it, at his own bid, on the conditions and reservations aforesaid."

It further appeared, that after the conditions were read, the defendants proceeded to offer the right of the town for sale. A person bid $100·00, and Whiting then bid $5000·00,

and it was struck off to him. The defendants then requested him to pay or secure the said sum of twenty dollars, which he refused, denying the right of the committee to annex any such condition, and saying he was ready to comply with the vote of the town, and that according to that he was to have thirty days in which to elect whether he would take the house.

On this refusal, the defendants said they should not consider his offer as a bid, and proceeded forthwith to set up the right of the town for sale again. David Felt thereupon bid $107·00 and the plaintiff bid $108·00. No one offering more, the defendants inquired of the plaintiff if he would comply with the conditions, and pay or secure the $20·00, which he refused, but said he would comply with the conditions of the town.

He was then told by the defendants, that they should not consider it a bid, and they then inquired of Felt if he would take it, at his bid, and comply with the conditions; and on his answering in the affirmative, it was struck off to him, and a deed afterwards executed to him.

On this evidence a verdict was taken for the defendants, by consent, subject to the opinion of this court upon the foregoing case.

*Farley*, for the plaintiff.

*Newton*, for the defendants.

Gilchrist, J. It appears from the facts in this case, that the defendants, having authority to sell the right of the town in the meeting-house, by auction, had two objects in view, in adopting the course which they pursued in the discharge of their duty. The first was, to act according to the authority with which they were invested by the vote of the town. The second was, to prescribe such conditions, in addition to those required by the vote of the town, as

would make it for the interest of the purchaser to complete the contract, and would indemnify the town for such expenses as might be incurred, if the purchaser should recede from his bargain, and thereby render another sale necessary. Their advertisements, therefore, contained the terms of sale prescribed by the votes of the town, and a further condition prescribed by themselves, that the purchaser should make a deposit of twenty dollars, which was to be forfeited if he did not furnish the required security, and comply with the terms of the sale.

The right of the parties in this case may be considered in two views. First, upon the position that the defendants had, and secondly, that they had not, a right to require a deposit of twenty dollars.

Had they a right to require such deposit? They were the agents of the town, to sell the property of their principal, with certain instructions for their guidance. Of course, it was their duty to follow those instructions.

The general power possessed by an agent in the prosecution of his peculiar duties, seems to be well ascertained and settled. It is said that an authority is to be so construed, as to include all necessary or usual means of executing it with effect. *Paley on Agency*, 189; *Howard* vs. *Baillie*, 2 *H. Bl.* 620.

And a power to do any act, comprises a power to do all such subordinate acts as are usually incident to, or are necessary to effectuate the principal act in the best and most convenient manner. *Paley on Agency*, 209; *Richardson* vs. *Anderson*, 1 *Camp.* 43, *n.*

A general authority to an agent to contract for grain, reasonably implies a power to modify or cancel contracts which might be made by him: for this power is essential to enable the agent to protect the interests of the principal; otherwise he is circumscribed in the exercise of his discretion, when it might be most essential in the course of the execution of his powers. *Anderson* vs. *Coonley*, 21 *Wend.* 279.

Goodale *v*. Wheeler.

It is a general maxim, that an authority to accomplish a definite end, carries with it an authority, so far as the constituent can confer it, to execute the usual, legal and appropriate measures proper to accomplish the object proposed. *Valentine* vs. *Piper*, 22 *Pick*. 92.

The duty of the defendants, in selling the property, was to follow the instructions of the town, so far as they went. And, consistently with the principles above referred to, they might adopt such further regulations as to the sale, and prescribe such further conditions, as would best carry into effect the object of the town. Of course they could do nothing inconsistent with their prescribed duty, or with the votes of the town. If they considered it necessary, in order to effect the sale in the best manner, that certain other conditions should be imposed, which did not conflict with the purposes for which they were appointed, there seems to be no reason why they should not impose them. Their discretionary power extended, however, only to a choice of such modes as would carry out their object. They had no authority to act in contravention of the intent of the town. There is nothing in the votes inconsistent with the exercise of such a power, and the condition prescribed by the defendants seems to be a very sensible and appropriate one. If a person were disposed to prevent a sale, he might bid a sum so large as to be altogether disproportioned to the value of the property, and then refuse to complete the contract. Under the vote of the town, there would be nothing to ensure his compliance, for he would forfeit nothing by his refusal. It is evident that a number of persons, by uniting their efforts, might thus protract the sale indefinitely ; and some such disposition existed, if we may judge of the price which the property sold for, compared with the sum of $5000·00, bid by Whiting. Or, as the pew owners were allowed ten days within which to determine whether they would sell, another bidder might think he could bid with safety, as, if there were a prospect of his being obliged to purchase more

pews than he thought it for his interest to own, he would still have twenty days after the expiration of the period of ten days, in which to notify the defendants that he should not complete the contract. The condition prescribed by the defendants, requiring a deposit of money, was well calculated to avoid these inconveniences, and to ensure a sale, and we consider it to be clearly within their general powers as agents. And as the plaintiff did not comply with the condition, he has now no right of action.

There is another view of the case, which leads us to the same result. Let it be admitted that it was not within the general powers of the defendants to impose this condition. In such case, what wrong has the plaintiff sustained by the act of the defendants? His position is, that it was their duty, as agents of the town, to convey the property to him, and that for such refusal to perform their duty they are answerable to him. The answer to this is, that their refusal to convey was a nonfeasance, for which they are liable, not to him, but to their employers. *Paley on Agency*, 396.

If they had refused to convey, so that the town lost the opportunity of selling the property, the town would have a remedy against them by action. But here, they have violated no duty to the plaintiff, for he has acquired no rights against them. If he had complied with their condition, and had deposited the money, a refusal by them to convey would give him a right of action, for their non-performance. But he now seeks to recover of them, on the ground that he has a right of action, as against them, when he admits that he has not complied with their condition. It does not appear that the town have complained of their conduct; and as they are satisfied with the acts of their agents, no other person has any right of action.

*Judgment on the verdict.*