MATTHIAS B. DENMAN, plaintiff in error, vs. JAMES BLOOMER, defendant in error.

*Error to Adams.*

An agent appointed for a special purpose, cannot go beyond the scope of such appointment and bind his principal; nor can he act after such employment ceases, by his having completed the business, to transact which he was constituted an agent. But within the scope of such employment, and until the power conferred is exhausted, or revoked, the agent can bind the principal, to the same extent that the principal can bind himself.

Each party asking instructions from the Court, should see that the instructions are proper in themselves. It is not sufficient that the necessary qualifications of them, may be found in the instructions given for the opposing party.

This was an action of assumpsit, brought by Denman, the plaintiff in error, against Bloomer, defendant in error, to recover money paid by Denman to Bloomer, agent. Plea, non-assumpsit. The plaintiff proved that, in July, 1848, a man named Johnson, came down the Mississippi river to Quincy, where Denman lived, with a raft of lumber. That Johnson represented to said Denman that said raft belonged to the defendant, Bloomer; it having been taken by him from a man by the name of Clinton, in payment of a debt due from Clinton to Bloomer; that Denman agreed to buy said raft of Johnson; that a day or two after the terms of said purchase were agreed upon, the raft arrived, Johnson having preceded it to Quincy; that it was landed at a place where the clerk of Denman was not willing to receive it, on account of the inconvenience of taking it from the water; that it was moved two or three blocks lower down the river, to a place designated by Denman's clerk, and landed; that said clerk did not think the raft safely landed, and so expressed himself to Johnson, who then had the raft in charge; that Johnson replied that it was safe, and he would insure it; that the person in charge of the raft left it, and Johnson went to Denman's office, and Denman paid Johnson $300, which Johnson paid to his men. The balance of the money was to be paid when the timber should be taken from the water and measured; the timber was to be removed from the water at Denman's expense. The next morning the raft was gone. At the request of Johnson, one of Denman's men went down the river in search of it, in a small boat, with other men. Johnson went down on a steamboat. Denman's man found the raft at Hannibal; and when Johnson, who had gone as far as Alton, was apprised by

23

telegraph of this fact, he returned to Quincy, settled with Denman, and agreed that he would take said raft under his own charge, and repay said Denman the $ 300, paid by him to Johnson, and, also, the expense incurred by Denman's man, named Naylor, in securing said raft at Hannibal. Johnson went to Hannibal, took charge of the raft, and took it down the river, and said Naylor returned to Quincy, bringing with him Johnson's draft for $ 345, drawn on said Bloomer. Johnson had arranged with Denman, at Quincy, that after learning the amount of expenses from Naylor, he would give Naylor a draft on a firm in Hannibal, or on his principal, Bloomer, for all the money paid by Denman; which draft he promised should be paid at maturity. The draft was never paid, nor any of the money advanced by Denman.

The above is the substance of the testimony of Woodruff, who was Denman's clerk. The said Naylor, Denman's agent, testified, in substance, the same matters.

Aaron Denman, the father of plaintiff, testified, that, in August, 1848, being on his way to Galena, he took with him Johnson's draft on Bloomer, for acceptance. Bloomer was unwilling to accept said draft, until he had heard further from said Johnson; but said the draft should be paid, and admitted that Johnson was his agent, and requested one E. N. Turner to write on the face of said draft that he declined accepting it, on the ground that he had not heard from Johnson on the subject, "but acknowledged Mr. James M. Johnson to be his legal and authorized agent." This was written on the draft by said Turner, at the request of Bloomer, and in his presence. The witness believes that he told Bloomer on what account the draft was drawn by Johnson, in favor of plaintiff, Denman. The plaintiff, also, gave in evidence said draft, with the indorsement above stated on its face. The defendant produced the said Johnson as a witness, who testified that one Clinton was the owner of said raft; that Clinton brought it to Galena, where Bloomer lived; that Clinton was in debt to Bloomer, and it was agreed between Clinton and Bloomer, that the raft should be sent to market at Clinton's expense, and that Johnson, who was Bloomer's clerk, should go down the river and make sale of the raft, and, after paying expenses, the proceeds should be paid over to Bloomer on Clinton's debt; the raft was to be sent to market at Clinton's

expense and risk, and he was to pay Johnson, and Johnson was
to be his agent for the purpose of selling the raft, and Bloomer's
agent for the purpose of receiving the money. The witness
came down the river in advance of the raft, to Keokuk. When
the raft arrived at Keokuk, witness came down to Quincy, and
made the sale. He denies that he represented to Denman that
Bloomer was the owner of the raft, or that he was Bloomer's
agent to sell the raft. His account of the landing of the raft,
and the payment of the $300, by Denman, is substantially cor-
rect, except that he says he deemed the delivery of the raft
complete. He admits that he drew the draft on Bloomer, given
in evidence, under the circumstances detailed by the other wit-
ness, but says he had no authority to draw the draft, but thought
he had been badly used by the plaintiff; was among strangers,
in a difficulty, and was determined to extricate himself in the
best way he could. The witness took the raft at Hannibal, sold
it, and paid the proceeds, after deducting expenses, to Bloomer.
Witness was, and had been for several years, the clerk of
Bloomer, and his agent in transacting the business of Bloomer,
who is a lumber dealer, and received a salary from Bloomer,
which continued to run whilst engaged in this expedition down
the river, though he was also paid for this trip by Clinton.

In the progress of the trial, the following instructions were
given, at the instance of the defendant : 1. The Court is asked
to instruct the jury, for the defendant, that if they believe from
the evidence that the raft of lumber belonged to Clinton, and
was intrusted by Clinton to Johnson, to be sold on his, Clinton's,
account, and to be at the risk and cost of Clinton, until it was
sold, that then Bloomer is not liable for any costs or expenses
incurred on account of the raft, although the proceeds of the
raft when sold were paid over to Bloomer, on a debt due him
by Clinton. 2. That if they believe from the evidence that the
raft was the property of Clinton, and was to be carried to mark-
et at the expense and cost of Clinton, and not at the cost of
Bloomer, and that Johnson was acting for Clinton, and at his
request, in the sale of the lumber, that then Bloomer would not
be responsible for money received or expenses incurred by John-
son, in getting the raft to market. 3. That the fact of Johnson
being along with the raft, for the purpose of receiving the money,
and paying it over to Bloomer, on Clinton's account, would not

authorize Johnson to bind Bloomer for expenses incurred in taking the raft to market, if the jury believe from the evidence that the raft was the property of Clinton, and to be taken to market at Clinton's expense. 4. That the fact of Johnson being the clerk of Bloomer, and engaged in transacting business for him, would not authorize Johnson to bind Bloomer for expenses incurred by Clinton, in reference to Clinton's business. 5. That the jury ought not to find a verdict against Bloomer in this case, unless they believe from the evidence, that the raft, on account of which the money was obtained, was the property of Bloomer; or that Johnson had authority from Bloomer to bind him for debts contracted on account of said raft. 6. That if the jury believe from the evidence that Johnson drew a draft in favor of Denman on Bloomer, without authority from Bloomer to do so, that then Bloomer would not be responsible for the amount of said draft, but that Denman would have to look to Johnson for the amount of said draft. 7. That unless the jury believe from the evidence that Bloomer is indebted to Denman, for money lent by Denman to Bloomer, or for money paid by Denman to Bloomer, at Bloomer's request, or for money received by Bloomer for Denman, or for money found to be due from Bloomer to Denman, on a settlement of accounts between them, that then they will find a verdict for the defendant. 8. That even if the jury believe from the evidence that the raft in question belonged to the defendant, Bloomer, and that he sent Johnson down the river with said raft, to sell as his, Bloomer's, agent, and pay the proceeds of such sale to Bloomer, and if the jury further believe from the evidence that said Johnson, in pursuance of his said agency, sold the said raft to Denman, and delivered it to Denman's agent, at the place specified by him for that purpose, and that Denman thereupon paid said Johnson a part of the purchase money of said raft, then, under these circumstances, the said Johnson would not have any right to rescind said sale, and draw a draft upon Bloomer for the amount paid him by Denman; nor would Bloomer be legally bound to repay Denman the amount so paid by him to Johnson.

To the giving of these instructions the plaintiff excepted. The plaintiff then moved the Court to give the following instructions; which was done: 1. If the jury believe from the evidence that Johnson was the duly authorized agent of Bloomer;

that as such agent he had control of said raft; that he represented to Denman that Bloomer was the owner of said raft; that Denman, relying on his representations, dealt with Johnson in relation to said raft under the belief that Bloomer was the owner thereof, that belief having been induced by the representations of Johnson, then Bloomer is not permitted in this suit to deny that he was the owner of said raft. In such cases the principal is bound by the representations of his agent, made at the time of transacting the business about which the representations were made. 2. If the jury believe from the evidence the facts upon which the first instruction is predicated, in regard to the agency and representations of Johnson; and if they further believe from the evidence, that after said raft broke from its fastenings, said Johnson took charge of said raft, in behalf of his principal, and on a settlement with the plaintiff, promised, on behalf of the defendant, to repay said plaintiff whatever money had been paid and expended by said plaintiff about said raft, then no question arises in the case about the delivery of said raft to the plaintiff, before said raft broke from its fastenings, and the jury will find for the plaintiff a verdict for such amount as he may have paid upon and about said raft, with interest thereon from the time such amount was to be repaid to said plaintiff. 3. If the jury believe from the evidence that the agent of the defendant, duly authorized by the defendant to transact his business in relation to said raft, admitted, in a settlement with the plaintiff of the business arising from said raft, that the sum of $345 was due to the plaintiff from the defendant, then such admission is the same as if it had been made by the defendant himself. An admission by a man's agent, in relation to business which he is authorized to transact, and made at the time of transacting such business, is regarded by the law as an admission of the principal himself. 4. If the jury believe from the evidence that Denman paid a certain sum of money to Johnson, as agent of Bloomer, which money Johnson was authorized to receive, and did receive, as agent of Bloomer, and used for Bloomer's benefit, then the jury will find for the plaintiff a verdict for such sum, with interest thereon from the time such money was agreed to be repaid.

The defendant then moved the Court to give the following instruction; which the Court accordingly gave: 9. That

although the jury may believe from the evidence that Johnson was Bloomer's agent, and in his employ for the transaction of his, Bloomer's, business, that this would not authorize Johnson to bind Bloomer for debts incurred in relation to the business or property of other persons. And if they, also, believe from the evidence that the raft was the property of Clinton, that then Johnson would have no right to bind Bloomer for the expenses of said raft, notwithstanding he was Bloomer's agent at the same time, for other purposes.

To the giving of this instruction plaintiff, also, excepted.

The following instruction was given, at the instance of the plaintiff: 5. The jury are further instructed, that the instructions asked and given for the defendant in this case, while they lay down correct principles of law, are yet to be taken by the jury, subject to the modifications to be drawn from the instructions given for the plaintiff in this case, relative to the manner in which an agent can bind his principal, and in relation to the manner in which a man may be estopped from denying what his duly authorized agent has represented to other persons dealing with such agent.

The defendant then moved the Court to give the following instruction: 10. That the plaintiff's instructions are given subject to all the modifications contained in those given on behalf of defendant; which the Court accordingly gave, and the plaintiff excepted. The jury found a verdict for the defendant. A motion for a new trial was made, and overruled, and judgment given for the defendant. Cause heard before Minshall, Judge, at June term, 1849. The plaintiff sues out the writ of error, and brings the cause to this Court.

In support of the motion for a new trial, the plaintiff filed his affidavit, stating that he had been greatly surprised by that portion of the testimony of Johnson which stated that he, Johnson, was the agent of Clinton, and not of Bloomer, in selling the raft; and that he had no witness present at the trial to rebut this statement, but that he could rebut that portion of the testimony by divers persons, whom he named: the affiant never having heard, prior to the trial, the name of Clinton in connection with the transaction.

The plaintiff assigns for error, the giving of the instructions for defendant, and the refusal to grant a new trial.

WILLIAMS & LAWRENCE, for plaintiff in error:

The first instruction was wrong, because founded on a partial view of the case, and because it takes from the consideration of the jury, altogether, the facts which the plaintiff's evidence undeniably tended to prove, and, as we contend, did satisfactorily prove. This instruction directs the jury to find for the defendant, if they believe merely that the raft belonged to Clinton, and was intrusted by him to Johnson, to be sold. Yet there was strong evidence to show that Johnson was Bloomer's agent, and that Denman dealt with him as such; and that in such dealings Johnson represented to Denman that the raft was Bloomer's. If the jury believed this evidence, then Bloomer was estopped to deny that the raft was his, although in point of fact it belonged to Clinton. 1 Greenleaf Ev., 249, sec. 207–8; ibid, sects. 113, 114. The first instruction, then, should have received such a qualification as the following: " Unless the jury further believe that Johnson was the authorized agent of Bloomer, in regard to this raft, and that in selling said raft to Denman he represented it to be Bloomer's property, and that he was Bloomer's agent, and Denman dealt with him in the manner he did on the faith of such representations, in which case they must find for the plaintiff." " When the language of an instruction as asked is calculated to mislead the jury, it should be so modified or changed as to prevent such a result." Hays vs. Borders, 1 Gilm., 66. A party asking instructions must either confine them, (if they are of partial application only,) in terms, to the particular issue to which they were intended to apply; or must modify them in such a manner as will make the jury aware that it is only in the event that other issues are not found against him, that they can base their verdict, if supported by facts, on the law, as asked in his favor by him. Vanlandingham vs. Huston, 4 Gilm., 127. As an instance of how the Court should and does modify instructions, when of partial application, in cases where there are not different issues but conflicting evidence, see Baxter vs. The People, 3 Gilm., 383. The law of 1846–7 in regard to instructions, does not change this rule. Bunn vs. The People, 4 Gilm., 441. The fourth instruction was manifestly wrong, for it asserts the extraordinary proposition that an agent cannot bind his principal for expenses incurred by a third person, in reference to such third person's business, though it is equally the business of

the agent's principal.  As applicable to this case the instruc-
tion says, that Johnson could not bind Bloomer, in reference to
Bloomer's business, if it was also the business of Clinton.   The
fifth instruction is liable to the same objections urged to the first.
The sixth instruction was clearly wrong, since it goes upon the
idea that the suit was brought upon the draft; which was not
the fact.   The seventh instruction was designed and calculated
to mislead the jury, and could have no other effect, and submit-
ted to the jury a question of law.   The eighth instruction asserts
a proposition of law that is clearly wrong.   A special agency
includes general powers as to the object of the special agency.
The case of Anderson vs. Coonley, 21 Wend., 279, is decisive
as to this point.   So also the note to Story on Agency, 3d edi-
tion, page 148, sec. 127.   But this instruction, in substance, di-
rects the jury that even a general agent cannot rescind a sale.
The ninth instruction is open to the same objections urged to
the first and fourth.   Where an erroneous instruction of the
Judge could have influenced the jury, a new trial will be grant-
ed.   Lane vs. Crombie, 12 Pick., 177 ; Boyden vs. Moore, 5
Mass., 371 ; Pate vs. The People, 3 Gilm., 661 ; Snyder vs.
Lapamboise, Breese, 268 ; Elting vs. Bank of U. S., 6 Pet. Con.
Rep., 220 ; Wilson vs. Rastall, 4 Term R., 758, bottom paging ;
Williams vs. Cheesbrough, 4 Conn., 362.   And this, though the
evidence may have justified the verdict.   Leonard vs. Smith,
11 Met., 330 ; James vs. Langdon, 7 B. Monroe, 193 ; Wardell
vs. Hughes, 3 Wend., 419; Gaines vs. Buford, 1 Dana, 502 ;
Gillespie vs. Gillespie, 2 Bibb, 89.   To show how decisive is a
misdirection of the Court on a motion for new trial, as compared
with other causes, see Graham on New Trials, page 265, and
cases cited ; 3 J. R., 180 ; Holliday vs. Atkinson, 11 Eng. Com.
Law, 287.   As to the affidavit: cases in which new trial has
been granted to plaintiff, on ground of surprise :   Peterson vs.
Barry, 4 Binney, 481 ; Weak vs. Callaway, 7 Price, 677, quoted
Graham on New Trials, 183 ; Edie vs. East Ind. Co., 1 W.
Black., 295 ; Niles vs. Brackett, 15 Mass., 359, marginal paging.
Further as to surprise :  McFarland vs. Clark, 9 Dana, 134 ;
Cutler vs. Rice, 14 Pick., 494; Millan vs. Field, 3 A. K.
Marsh., 110.   The new evidence disclosed in the affidavit is not
cumulative.   Cumulative evidence is evidence of the same kind,
to the same point ; and an admission of a party is not cumula-

tive. Parker *vs.* Hardy, 24 Pick., 248; Schlencker *vs.* Risley, 3 Scam., 487.

R. S. BLACKWELL, for defendant in error:

1. There was a complete and perfect sale and delivery of the raft to Denman. Wing *vs.* Clark, 24 Maine R., 366; Lansing *vs.* Turner, 2 John. R., 13; Smith *vs.* Nevill, Walker's R., 370. Whether the sale was complete or not, is a question of fact for the jury. De Rudder *vs.* McKnight, 13 John. R., 293; Byer *vs.* Elvine, 2 Gil., 162; 9 Pick., 209–10; Hondlette *vs.* Tallman, 14 Maine R., 400; Blenkensop *vs.* Clayton, 2 Eng. C. L. R., 230–1; Phillips *vs.* Bristolli, 9 Eng. C. L. R., 162; Chaplin *vs.* Rogers, 1 East R., 192; Caldwell *vs.* Smith, 3 and 4 Dev. & Bat., 64. If the sale was actually completed, Johnson, being a special agent, had no authority to rescind the sale. Story Agency, sec. 96; Bradford *vs.* Bush, 10 Ala. R., 389; Peters *vs.* Ballistier, 3 Pick. R., 503; Thorndike *vs.* Godfrey, 3 Green. R., 429; Rossiter *vs.* Rossiter, 8 Wend. Rep., 494. Whether Johnson did exceed his authority, in recinding the sale, was also a question of fact, proper to be left to the jury. McMorris *vs.* Simpson, 21 Wend. R., 610; Mechanics' Bank *vs.* Bank of Columbia, 4 U. S. Cond. R., 671. The acts of Bloomer do not amount to a ratification of the contract, because he did not possess a full knowledge of all of the facts of the case. Owings *vs.* Hull, 9 Peters, 628–9; Thorndike *vs.* Godfrey, 3 Greenl. R., 429. The circumstances negative the idea of a ratification and promise. Peters *vs.* Ballistier, 3 Pick., 504–5. And if Bloomer made one, it is *nudum pactum.* Fenn *vs.* Harrison, 3 T. R., 754; May *vs.* Coffin, 4 Mass., 341. 2. Whether Johnson was the agent of Bloomer or Clinton, was a fact for the jury to determine. The declarations of Johnson were not competent evidence to establish the fact that he was the agent of Bloomer. 2 Stark. Ev., 34–5; 1 Greenl. Ev., 137, sec. 113; Story on Agency, sec. 135; 2 Greenl. Ev., 46, sec. 59–60. 3. If Clinton was the owner of the raft, and Johnson was his agent in the sale and rescission of the contract, this action cannot be maintained against Bloomer, because there is no privity between him and Denman. England *vs.* Clark, 4 Scammon, 486, 489, 493; Williams *vs.* Everett, 14 East, 598; Tiernan *vs.* Jackson, 5 Peters, 599, 603. The Court will not disturb the verdict of a jury,

unless it is manifestly and palpably contrary to the evidence in the case. Dawson *vs.* Robbins, 5 Gilman, 72; Kincaid *vs.* Turner, 2 Gilm., 618. Nor merely for the reason that upon such evidence they would have found differently. Wendall *vs.* Stafford, 12 N. H. R., 171. Nor where the credibility of witnesses is to be considered, presumptions to be raised, and inferences to be made, and where the nature of the evidence is such that different persons might reasonably have different impressions of the case. Wendall *vs.* Stafford, 12 N. H. R., 171. Nor in any case where the Court is satisfied, from an inspection of the whole record, that justice has been done. Peck *vs.* Land, 2 Kelly R., 16. Nor will a new trial be granted because the Court below misdirected the jury, on a question of law, if this Court can see from the whole record, that the verdict is right. Greenup *vs.* Stoker, 3 Gilm., 202; Leigh *vs.* Hodges, 3 Scam., 15; Gelett *vs.* Sweat, 3 Gilm., 644; Seare *vs.* Prentice, 8 East, 348; Edmonson *vs.* Muchell, 2 T. R., 4; Estwick *vs.* Carlland, 5 T. R., 426; Fleming *vs.* Gilbert, 3 Johnson, 528; Harris *vs.* Doe, 4 Blackford, 370. Nor can a plaintiff claim a new trial, because he was surprised by the evidence of the defendant. Cummings *vs.* Walden, 4 Blackf., 307; Jackson *vs.* Roe, 9 John., 77; Ford *vs.* Tilly, 2 Salk., 653; Price *vs.* Brown, 1 Strange, 691; Alexander *vs.* Byron, 2 John. Ca., 318; Knox *vs.* Work, 5 Binn., 582, and note; Marriott *vs.* Hampton, 7 T. R., 142. The affidavit is not set out in the record, and this Court cannot, therefore, take notice of it. Petty *vs.* Scott, 5 Gilm., 209.

BROWNING & BUSHNELL, on same side :

I. There was in this case a complete and perfect sale and delivery of the raft to Denman, sufficient to vest the title in him. 1. Where there has been a delivery of the goods, actual or virtual, and no further act remains to be done by the vendor, the title of the property passes to the vendee ; even where some act remains to be done by the vendor, and the transaction shows the parties understood the sale to be complete, and where the delivery is in the only convenient mode, the title passes. Hinde *vs.* Whitehouse, 7 East, 558, 571 ; Jewell *vs.* Warren, 12 Mass., 309 ; Boynton *vs.* Vesey, 24 Maine, 286 ; Macomber *vs.* Parker, 13 Pick., 175; Sudwig *vs.* Fuller, 17 Maine, 162; Hollings-

worth *vs.* Bales, 2 Black., 340; Jennings *vs.* Webster, 7 Cow., 256; 14 Wend., 664–5–7. It is only where some act remains to be done by the vendor, without which the vendee has no right to take possession of the goods, and until which is done they remain in the power and control of the vendor, that the question as to whether an act is to be done is material. The act must be one which is to be done by the vendor, and in the nature of a condition precedent. Davis *vs.* Hill, 3 N. Hamp., 382; Hanson *vs.* Meyer, 6 East, 615, and note; The People *vs.* Haynes, 14 Wend., 564–5, 567; Outwater *vs.* Dodge, 7 Cow., 85. 2. Where there is an actual delivery of property, the sale is complete, though, by the understanding of the parties, something is still to be done. The doctrine, that some act to be done prevents the completion of the sale, applies only to cases of symbolical delivery, not to cases where there is an actual delivery. The delivery is to be made according to the nature of the property. Sumner *vs.* Hamlet, 12 Pick., 76, 82; Macomber *vs.* Parker, 13 Pick., 175; Boynton *vs.* Vesey, 24 Maine, 286; Jackson *vs.* Warren, 12 Mass. 309. The real question is not as to whether some act is to be done, but whether, under the actual arrangement, the vendee has the right to possession, before it is done. If so, the delivery is complete. Sudwig *vs.* Fuller, 17 Maine, 162; Boynton *vs.* Vesey, 24 Maine, 286. Thus the delivery of a part is a delivery of the whole, and the title to the balance is passed, though it yet remains to be separated from the mass. Damon *vs.* Osborn, 1 Pick., 476, 481; Parks *vs.* Hall, 2 Pick., 206; Sheby *vs.* Hawyard, 2 H. Black., 504, 509. 3. Indeed, as between the vendor and vendee, at common law, no delivery, actual or symbolical, is necessary. The completion of the bargain is, at common law, all that is required to pass the title. Delivery becomes necessary as to third parties under the statute of frauds. 2 Black. Com., 488; Willis *vs.* Willis, 6 Dana, 48; Shumway *vs.* Rutter, 7 Pick., 56; same case, 8 Pick., 443; Haskell *vs.* Greely, 3 Greenl., 425; McCoy *vs.* Moss, 5 Porter, 88; The State *vs.* Fuller, 5 Iredell, 26; Parsons *vs.* Dickinson, 11 Pick., 352; Hosban *vs.* Brawell, 16 Ohio, 509; Rucker *vs.* Cross, 5 N. Hamp., 570; Champion *vs.* Searl, 3 Pick., 38, 42. Where the terms of the sale are agreed on and the bargain struck, every thing the seller has to do with the goods, before the vendee has the right to take the possession of

them, is complete, the contract of sale becomes absolute, and the property of the goods is in the buyer, and if destroyed by fire or other accident he must suffer the loss. Wing vs. Clark, 24 Maine, 366; Lansing vs. Turner, 2 John., 13; 2 Sup. U. S. Dig., 715, sec. 113; Smith vs. Nevill, Walker Rep., 113. In this case there was nothing to be done in part, the sale was a unit; the measuring, so far as the bill of exceptions show, might and was only for the satisfaction of Denman. 6 East, 626; 4 Bos. & Pul., 69. 4. Whether there has been a completion of the sale by delivery, is often a question as to the understanding and intention of the parties at the time; it depends on circumstances, the nature and situation of the property, the agreement and understanding of the parties. Whether the sale has been completed is a question of fact for the jury. De Rudder vs. McKnight, 13 John., 293; Byer vs. Elmire, 2 Gil., 151, 162; 19 Pick., 209–10; Mason vs. Leshbarrow, 1 H. Black, 351, 363–4; Phillips vs. Bristolli, 9 Eng. Com. Law, 162; Lansing vs. Turner, 2 John., 13, 17; Hondlette vs. Tallman, 14 Maine R., 400; Caldwell vs. Smith, 3 and 4 Dev. and Batt., 64; Chaplin vs. Rogers, 1 East, 192; Blenkinsop vs. Clayton, Eng. Com. Law Rep., 230. 5. There was no privity of contract between Bloomer and Denman. The action for money had and received is based on privity. The surplus fund was received on Bloomer's own account, as of Clinton. Campbell vs. Trumbull, 3 Gil., 502; Tiernan vs. Jackson, 5 Pet., 580, 594, 598, 599, 600; England vs. Clark, 4 Scammon, 486, 489, 493; 14 East, 582; Chitt. Cont., 480, 484, a.

II. Johnson was the special agent of Clinton for some purposes, and the agent of Bloomer for others. The most that could be said from any view of the evidence, is that he was the special agent of Bloomer to sell Bloomer's raft, as assumed in one of defendant's instructions. Having as special agent made the sale and received a part of the purchase money, he could not cancel the sale, or rather, as it in fact would be, re-purchase the property. The power to sell the raft for Bloomer would give him no power to buy lumber, and bind him for the purchase money. The distinction between a general and special agent is well settled. 1. A person authorized to do a particular act, or purchase or sell a particular parcel, is a special agent. A person employed to do all acts, or purchase or sell all goods re-

quired in a particular business or employment, is a general agent. Story on Agency, secs. 17, 18, 19, and notes to pages 122 and 131; Rossiter *vs.* Rossiter, 8 Wend., 494; Peters *vs.* Ballistier, 3 Pick., 495; Jacques *vs.* Todd, 3 Wend., 91; Fenn *vs.* Harrison, 3 T. R., 754; Beals *vs.* Allen, 18 John., 363. Johnson could be the special agent of Clinton for one purpose, whatever might be his relations to Bloomer for other purposes. 12 Pick., 82. 2. A special agent can bind his principal only to the extent of his special authority, and his powers will be strictly construed. The acts of agents do not derive their validity from 'purporting to be done within the scope of their powers. They must be so done in fact. The person dealing with him must know the extent of his authority. Story's Eq. secs. 80, 92, 96, 98, 99, 114, 121, 125, 131, and note 133; 14 Eng. Com. Law, 43–4; Mechanics' Bank *vs.* Bank of Columbia, 4 Cond., 671. The extent of authority of an agent is a question for the jury. 21 Wend., 610; 1 Pet., 289–90. 3. Even a general agent will be confined to the employment in which he is engaged, however broad and comprehensive the terms in which his general power is given. These cases show the strictness of construction applied to the powers of agents, whether general or special. Story's Ag., secs. 21, 22, 62, 69; Rossiter *vs.* Rossiter, 8 Wend., 494; Atwood *vs.* Munnings, 14 Eng. Com. Law, 45; Kilgour *vs.* Finlyson, 1 H. Black., 155; Nixon *vs.* Hyserott, 5 John., 58; Potter *vs.* Dennison, 5 Gilm., 590, 598, 599. As to the livery stable case in 3 T. R., 761, see Story's Agency, p., 122, and note; Pickering *vs.* Bush, 15 East, 45. 4. A power to a special agent to sell cannot make representations about the property to bind his principal. He can sell, and do nothing else. Gibson *vs.* Colt, 7 John., 390; Nixon *vs.* Hyserott, 5 John., 58. Nor can he bind his principal by a note, payable in the property he is authorized to sell. Dunnyson *vs.* Tyson, 17 Vermont, 549, 554; Smith *vs.* Gibson, 6 Blackf., 369. 5. Having made a sale, he cannot afterwards cancel it, and take back the property, unless in pursuance of some usage of trade to that effect. Story on Ag., secs. 86, 87, 88, 89; Bradford *vs.* Bush, 10 Alabama, 386; Thorndike *vs.* Godfrey, 3 Greenl., 429, 431. Nor is there any reason why he should have the power to recall or re-purchase the property after sale. The only one which could be urged, would be thereby to secure his principal against loss, from the insolvency

of the vendee. But a special agent, to sell, can sell only for cash, and the insolvency of the vendee cannot, therefore, affect the principal. Story Ag., secs. 77, 78; Delafield *vs.* Illinois, 2 Hill, 159; Falls *vs.* Gaither, 9 Porter, 605. 6. A promise of the principal to pay money, on a transaction wherein the agent had no authority to bind him, is a *nudum pactum.* In this case, it is clear Bloomer never intended to make a binding promise; for he all the time refused to pay or to accept the bill. Fenn *vs.* Harrison, 3 T. R., 754; May *vs.* Coffin, 4 Mass., 341; Tower *vs.* Durrell, 9 Mass., 332. And any promise to bind the principal in such case, or in any case where the agent had acted without authority, should be clearly shown to have been made with a full knowledge of the facts, and the promise must be full and unequivocal. Story's Ag., sec. 244, and note 245, 246; Thornton *vs.* Wynn, 6 Cond. R., 508, 512; Trimble *vs.* Thorne, 16 John., 151, 153; Garland *vs.* Salem Bank, 9 Mass., 408; Miller *vs.* Hackley, 5 John., 375, 384–5; Bell *vs.* Cunningham, 3 Peters, 69, 80, 81; Owings *vs.* Hull, 9 Peters, 607, 629; Blevins *vs.* Pope, 7 Alabama, 371; Thorndike *vs.* Godfrey, 3 Greenl., 429, 432; Smith *vs.* Gibson, 6 Black., 367.

III. No cause for a new trial. The evidence to sustain the verdict of the jury is abundant. 1. It is only in cases where the verdict strikes the mind, at the first blush, as manifestly and palpably contrary to the evidence, that the Supreme Court will, for that reason, interfere to set it aside. Dawson *vs.* Robbins, 5 Gilm., 72; Kincaid *vs.* Turner, 2 Gilm., 618. Nor will the Court set aside the verdict because, on an examination of the evidence, the Court might have arrived at a different conclusion. Wendall *vs.* Stafford, 12 N. Hamp., 171. Nor where the credibility of witnesses is to be considered, presumptions to be raised, or inferences to be made; or where, from the character or nature of the evidence, different persons might come to different conclusions. Wendall *vs.* Stafford, 12 N. Hamp., 171; Rowley *vs.* Kinney, 14 John., 186. Nor where justice has been done, even though the verdict is against evidence. Peck *vs.* Land, 2 Kelly R., 16. 2. Nor will the Court grant a new trial, because the Court below misdirected the jury, if the Supreme Court can see from the whole record that justice has been done. Greenup *vs.* Stokes, 3 Gilm., 202; Leigh *vs.* Hodges, 3 Scam., 15; Goodell *vs.* Sweat, 1 Gilman, 475; Seare *vs.* Prentice, 8

East, 348; Pate *vs.* The People, 3 Gilm., 644; Edmonson *vs.* Muchell, 2 T. R., 4; Eastwick *vs.* Calland, 5 T. R., 426; Fleming *vs.* Gilbert, 3 John., 528.   3. Nor is there any ground shown in the record for a new trial, on the ground of surprise. Neither the reasons for a new trial, nor the affidavit, are contained in the bill of exceptions; nor does the bill of exceptions purport to contain them. They are no part of the record. They should have been specifically referred to and identified by the bill. Vanlandingham *vs.* Fellows, 1 Scam., 233; Fry *vs.* Riley, 3 Scam., 259; Saunders *vs.* McCollins, 4 Scam., 420; Corey *vs.* Russell, 3 Gilm., 366; Wyman *vs.* Wood, 25 Maine, 436; Wadlington *vs.* Gary, 7 Smedes & Marsh., 522; Edwards *vs.* Patterson, 5 Gilm., 126; Holmes *vs.* The People, 5 Gilm., 479.   4. A plaintiff can in no case claim a new trial, on the ground that he was surprised by defendant's testimony, and had not come prepared to meet it. He may suffer a non-suit and recommence, but shall not lie by and speculate on the verdict. He may be *surprised* when the evidence is given, but he is not *surprised* when he, of his own accord, submits his case to the jury on the evidence, after he knows what it is, and when his position as plaintiff permits him to retreat. It is otherwise with the defendant, perhaps: he cannot retreat. Cummings *vs.* Walden, 4 Blackf., 308; Cook *vs.* Berry, 1 Wilson, 98; Jackson *vs.* Roe, 9 John., 77; Price *vs.* Brown, 1 Strange, 691; Knox *vs.* Work, 2 Binn., 582, and note; Alexander *vs.* Byron, 2 John. Ca., 318; Marriott *vs.* Hampton, 7 T. R., 142.   5. Nor will a new trial be granted on the ground of newly discovered evidence, where the evidence was known before the trial, or by reasonable diligence might have been produced; or where the object of the new evidence is to impeach a witness. This was all known to Denman before the trial; and as he was dealing with an agent, he was bound to come prepared to prove that defendant was the responsible principal, and not rely on its being admitted or proved by defendant on the trial. Coe *vs.* Givens, 1 Black., 367; Williams *vs.* Baldwin, 18 John., 489; 15 John., 213; 5 John., 248; 3 John., 256; 1 Scam., 491; 1 J. J. Marsh., 590; Wheelwright *vs.* Beers, 2 Hall, 391, 402; 3 Scammon, 486. Nor to admit evidence of the admissions of the opposite party. The cases of the party moving for a new trial on this ground, are persons acting in a fiduciary or representative capacity. Gugot *vs.*

Butts, 4 Wend., 479. The affidavits of the proposed new witnesses should, at least, have been produced, to show they were ready to give the proposed testimony. 4 Blackf. Rep., 98; 1 Hall, 382.

As Mr. BUSHNELL was proceeding to answer the arguments urged for a new trial, for the reason that plaintiff was surprised by the testimony of Johnson, he was stopped by the Court, with the suggestion that the plaintiff should have taken a non-suit in the Court below, if he did not wish to go to the jury upon the evidence presented. He ought not to be allowed to take his chance for a verdict and then complain that he has been surprised.

Opinion by Mr. Justice CATON :

The fifth and eighth instructions given for the defendant, were erroneous. The eighth instruction supposes that Bloomer was the owner of the raft, and that Johnson was his agent to sell it, and receive the purchase money. The jury were then instructed, that if Johnson had sold and delivered the raft to Denman, and received a part of the purchase money, he had no authority to rescind the sale, and make Bloomer liable for the money thus received.

An agent appointed for a special purpose—to transact a particular business, cannot go beyond the scope of such appointment, and bind his principal; nor can he act after such employment ceases, by his having completed and closed up the business, to transact which he was constituted an agent; but within the scope of such employment, and until the power conferred is thus exhausted, or has been revoked, the agent can bind the principal, to the same extent that the latter could have bound himself. In this case, Johnson's powers had not terminated by his having completed the business confided to him. He had sold the raft, it is true, but he had received only a part of the purchase money, while his employment required him to collect the whole. To deny the authority of the agent to take back the raft, while the transaction was thus incomplete, would often prove most detrimental to the principal. Suppose the agent had discovered that Denman was insolvent, and that, in all probability, the balance of the purchase money would be lost, autho-

rity to rescind the sale, and take back the raft, would have been indispensable to enable him to protect the interest of the principal.

This is not so strong a case as that of Anderson *vs.* Coonley, 21 Wend., 279. There the agent was authorized to contract for barley, and it was held, that he might rescind a contract which he had made, so long as his authority to make other purchases still continued. The case of Bradford *vs.* Bush, 10 Alabama, does not conflict with the principles above laid down, or with the case referred to. There the agent was authorized to sell some horses, which he disposed of to the defendant, and received other property, and a note, in payment. It was held that the agent could not, at a subsequent time, bind his principal, by a new agreement, to make good a defect in some of the horses. Clearly, in this case, the powers of the agent were exhausted, and his authority terminated. The case before us, however, was very different. The agent had but partially completed the transaction, when he thought proper to rescind what had been done; and in doing this, we think he acted within the scope of the authority, which the instruction supposes was conferred upon him, and perhaps for the best interests of his principal.

The fifth instruction, also, should have been refused. All that is assumed in that instruction might have been true, and the plaintiff still entitled to recover. It will be sufficient to give one assumed state of the case, to show this. Bloomer might have ratified all that Johnson is supposed to have done in his name; in which event, the defendant's liability would have been the same as if the agent had acted strictly in pursuance of his original appointment. This same objection may be urged to the eighth instruction. It is not sufficient that the necessary qualification may be found in the instructions given for the plaintiff; unless we can say, with entire confidence, that the jury could not have been misled by the erroneous instruction. After looking through all the instructions given for both parties, we are by no means prepared to say, that the jury must, necessarily, have understood the law of the case properly. Each party should see that his own instructions are proper in themselves.

The impropriety of giving instructions like those given in the present case, subject on one part to the modifications of the instructions given on the other, is thus spoken of in Gregory's

25

heirs *vs.* Ford, 5 B. Monroe's Reps., pa. 473: "The instructions asked for by the plaintiff are said, in the bill of exceptions, to have been given 'with the qualifications contained in the instructions given on the part of the defendants;' as the instructions given for the defendants are numerous and complicated, this general reference to them, as qualifying instructions, apparently given for the plaintiff, without designating the particulars in which they are intended to be qualified, or pointing out the particular instructions which conflict with each other, is objectionable, as wanting that certainty which is requisite to enable the jury correctly to apply the law to the facts before them."

The judgment below is reversed, with costs, and the cause remanded.

*Judgment reversed.*