WILLIAM H. M. SISTARE, Appellant, *v.* WILLIAM J. BEST, as Receiver of the MECHANICS AND TRADERS' SAVINGS INSTITUTION, Respondent.

*Savings bank — liability of, for the acts of its president.*

A savings bank, having taken certain shares of stock to secure a loan made by it, resolved that it be sold by the president for the best interest of the bank. The president sold a part of the stock and directed the plaintiff, a broker, to sell the remainder at a price named, which he did, and so advised the president. Whereupon the latter informed him that he had, himself, previously sold the stock; plaintiff being unable to deliver the stock was compelled to pay the purchaser $4,110.

In an action against the receiver of the bank to recover the amount so paid, *held* that the bank was liable to the plaintiff for the damage occasioned by the act of its president.

That the liability of the bank was not affected by the fact, that it was forbidden by statute to loan money upon personal security.

Appeal from a judgment in favor of the defendant, entered upon an order dismissing the complaint, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried, and upon a case and exceptions.

*Henry S. Bennett,* for the appellant.

*Frederick Smythe,* for the respondent.

Ingalls, J.:

The Mechanics and Traders' Savings Institution, being a corporation, became possessed of 1750 shares of the stock of the Atlantic Mail Steamship Company, having received the same as security for a loan of money to Joslyn & Co., amounting to $175,000. With a view to convert such stock into money, the directors of the said savings institution adopted the following resolution and recorded the same in its minutes:

"*Resolved,* that the 1750 shares Atlantic Mail Steamship stock be sold by the president for the best interest of the bank, without further delay, and in such form as will protect the bank, in its claim against Joslyn & Co., and that he report his proceedings at the next meeting of the board."

In accordance therewith, Alfred T. Conklin, then being a director of the said savings institution and the president of the board of directors, sold a portion of such stock, receiving therefor from $10 to $15 per share. He applied to the plaintiff, who was a broker, to sell 500 shares, being all that remained unsold, and instructed him to offer the stock for sale in the stock exchange every day until he was offered $25 per share and thereupon complete the sale. The plaintiff followed the directions of Conklin and sold the stock to a Mr. Davenport, in accordance with the rules and regulations of the stock exchange, with which Mr. Conklin is shown to have been familiar. Mr. Conklin was promptly advised of such sale, and called upon the plaintiff and informed him that he had previously sold said stock, but through inadvertence had omitted to inform plaintiff of such sale. An effort was made to induce Davenport to relinquish his purchase, which he refused to do, and required the plaintiff to fulfill his contract, and the plaintiff, being unable to deliver the stock, was compelled to pay the sum of $4,110, which he sought to recover of the said savings institution in this action. Upon the trial the defendant's counsel moved to dismiss the complaint on the following grounds:

First. On the ground that any authority that was given by the bank to Mr. Conklin, in reference to these transactions, is contained in the resolutions which have been introduced in evidence, and which show that it was an express authority to Conklin to sell the stock himself, and that it did not authorize him to employ any one else to do so.

Second. Assuming that Mr. Conklin had the right, under the resolutions in evidence, to employ plaintiff to act as agent of the bank, and that plaintiff effected a sale of 500 shares of Altantic Mail stock as the agent of the bank, and that he was unable to deliver that stock for the reason, as he states, that Conklin had already parted with it himself, the plaintiff cannot maintain this action. If there is any cause of action it is one in favor of the party who purchased the stock, for the recovery of the damages sustained by him, arising out of the refusal or neglect of the bank to comply with the terms of the contract.

Third. The bank had no authority to deal in this stock as a

bank. They had no authority to authorize the sale of this stock, and the resolution adopted by the board of trustees authorizing Mr. Conklin to enter into this contract with plaintiff, if it did authorize him to enter into it, was absolutely void because the bank never acquired any right, title or interest in that stock and had no right to, and was prohibited by law from dealing in it.

The court granted the motion and dismissed the complaint with costs, to which decision and ruling the plaintiff's counsel excepted. The plaintiff moved for a new trial upon the minutes of the court, which was refused; and the plaintiff has appealed from the judgment and the order.

The authority conferred by the savings institution upon Conklin to sell the stock was not restricted either as to time, place or manner, and in selecting the stock exchange he adopted the mode usually pursued in disposing of such securities, and the price there offered proved the wisdom of such choice, and it would have been fortunate for all concerned if he had adhered to it instead of making a private sale. We cannot doubt but that Conklin was authorized to employ the plaintiff to make such sale, as such authority could properly be implied from the general character of the instructions which he received, the nature of the property to be disposed of, and the custom which prevailed in regard to the sale of such securities. (*Anderson* v. *Coonley*, 21 Wend., 279; Story on Agency, § 14.) The plaintiff faithfully pursued the instructions which he received from Conklin, and is not even charged with fraud, negligence or incapacity. The loss was occasioned by omission of duty on the part of Conklin, in not informing the plaintiff that he had sold the stock previous to the sale at the stock exchange. Conklin represented the savings institution in two capacities. First. As its president; second, as its duly constituted agent for this particular purpose; but he must be regarded a general agent for this service, as he received no specific instruction which restricted his authority in regard to the plan or mode of sale. (*Anderson* v. *Coonley*, *supra*.) It is further insisted by the respondent that the corporation was not only without authority to loan the money to Joslyn & Co. upon such security, but was by statute expressly prohibited from making such loan and receiving such security, and that the entire transaction was, therefore, absolutely void,

and the corporation could not be made liable for the loss even though occasioned by its own act. We are unable to accept this proposition as sound, either in law or equity, as applied to the facts of this case. This corporation was formed under the laws of 1852 (chap. 368), and we discover no provision of such statute *which, in express terms,* prohibited the loan in question, upon such security. A statute which was enacted in 1853 (chap. 257), and which, by its terms, was made applicable to all savings institutions, contains the following provision : " Section 6. The provisions of this act shall apply to all savings banks, or institutions for savings in said counties (New York and Kings), which savings banks or institutions for savings are hereby prohibited from loaning the moneys deposited with them, or any part thereof, upon notes, bills of exchange, drafts or any other personal securities whatever." This defense might possibly be available in an action between the parties to the original loan, or as a ground for depriving the corporation of its charter. The savings institution made the loan, accepted the stock as security, treated the same as its property, and directed its sale, and so far as the case discloses no person has made any claim to the stock, or complained of the sale thereof. The prohibition contained in the statute, to which we have referred, could not possibly have the effect to divest the stock of its character as property. What then was the corporation to do with it ? Certainly it was not called upon to destroy it, nor can the statute operate as a perpetual injunction to prevent the corporation from selling the same, and thereby realising the money loaned, and for the security of which the stock was received. The corporation, at a proper time, and by the usual method, directed a sale of the stock, by and under the supervision of its president, who resorted to the usual mode for selling such securities, and the plaintiff pursued strictly, and in good faith, the directions which he received from Conklin, and obtained an offer for the stock greatly in excess of that which Conklin received upon the sale which he made ; and in consequence of the failure of Conklin to inform him that the stock had been previously sold, the plaintiff incurred a personal liability, by which he was compelled to pay the said sum of' $4,110, without any fault on his part. We cannot hesitate in regard to the equita-

ble right of the plaintiff to recover in this action, and we are satisfied that the law does not compel this court to defeat such equity by allowing the corporation, or its representative, to assert its own wrong as a defence to the just claim of the plaintiff. The law is not chargeable with such inconsistency and injustice. (*De Groff* v. *Am. Linen Thread Co.*, 21 N. Y., 124.) Judge BACON remarks : "If, however, they acquired the goods in any such way as to make the transaction doubtful, as a question of power, what are the corporations to do with property thus forced in or upon their hands ? Must they purge the illegality by giving the goods away or destroying them, or may they not sell and transfer a good title to a purchaser ? I think beyond all doubt they may, and that the contract can be upheld and enforced on this ground." (See, also, *Bissell* v. *M. S and N. I. R. R. Co.*, 22 N. Y., 259; *Tracey* v. *Talmage*, 14 id., 162; *The Oneida Bank* v. *The Ontario Bank*, 21 id., 490; *Buffett* v. *T. and B. R. R. Co.*, 40 id., 168; *Sutton and others* v. *Tatham*, 10 Adolph & Ellis, 27.)

We conclude that the complaint was improperly dismissed, and the judgment must be reversed and a new trial ordered, with costs to abide the result.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.